**E-FILED**
Monday, 02 April, 2007  04:14:06 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CENTRAL ILLINOIS CARPENTERS HEALTH )<br>& WELFARE FUND, CENTRAL ILLINOIS )<br>CARPENTERS RETIREMENT SAVINGS FUND, )<br>MID-CENTRAL ILLINOIS REGIONAL )<br>COUNCIL OF CARPENTERS, MID-CENTRAL )<br>ILLINOIS REGIONAL COUNCIL OF )<br>CARPENTERS JOINT APPRENTICESHIP AND )<br>TRAINING FUND, CARPENTERS FRINGE )<br>BENEFIT FUNDS and CARPENTERS LOCAL 44 )<br>)<br>    Plaintiffs,    )<br>)<br>vs.    )<br>)<br>OSC ENTERPRISES, INC.,  f/k/a BRUNSON )<br>CONSTRUCTION, INC.    )<br>)<br>    Defendant.    ) | No. |

**COMPLAINT**

NOW COME Plaintiffs, CENTRAL ILLINOIS CARPENTERS HEALTH & WELFARE

TRUST FUND, CENTRAL ILLINOIS CARPENTERS RETIREMENT SAVINGS FUND, MID-

CENTRAL ILLINOIS REGIONAL COUNCIL OF CARPENTERS,  MID-CENTRAL ILLINOIS

REGIONAL COUNCIL OF CARPENTERS JOINT APPRENTICESHIP AND TRAINING FUND,

CARPENTERS FRINGE BENEFIT FUNDS and CARPENTERS  LOCAL #44 by its attorneys,

Cavanagh & O'Hara, complaining of the Defendant, OSC ENTERPRISES, INC., f/k/a BRUNSON

CONSTRUCTION, INC.

1.    This action arises under the Employee Retirement Income Security Act of 1974, as

amended U.S.C. Title 29, Section 1145.

1

2.    The Plaintiffs, CENTRAL ILLINOIS CARPENTERS HEALTH & WELFARE TRUST FUND, et. al. are administered pursuant to the terms and provisions of the Declarations of Trust creating said Fund and is required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. §1001 *et seq.* The address and place of business of the Plaintiff Funds is Central Illinois Carpenters Health & Welfare Fund, 200 South Madigan Drive, Lincoln, Illinois 62656.

3.    That the Defendant is an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C. Sections 1002 (5), (11), (12) and (14).  Defendant employs individuals who are members of, and represented by United Brotherhood of Carpenters and Joiners of America, AFL-CIO, #1 Kalmia Way, Springfield, Illinois 62708, and said individuals are participants in Plaintiffs' benefit funds, pursuant to a Collective Bargaining Agreement by and between the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, #1 Kalmia Way, Springfield, Illinois 62708, and Defendant.  Said Collective Bargaining Agreement, in pertinent part,  is attached hereto and made a part hereof as **Exhibit A**.

4.    That the Defendant is an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C., Sections 1002 (5), (11), (12) and (14).  Defendant employs individuals who are members of, and represented by, Plaintiff's Local Unions, and said individuals are participants in Plaintiffs' benefits funds, pursuant to the Collective Bargaining Agreement (**Exhibit A**).

5.    The Defendant's address is 3302 Ridgewood Drive, Champaign, Illinois 61820.

6.    Pursuant to the Employee Retirement Income Security Act of 1974 (U.S.C. Title 29, Section 1145), the Defendant is required to make contributions to the Funds in accordance with the

-2-

terms and conditions of the Funds' Agreements and Declarations of Trust, and to pay liquidated damages in the event said contributions are not timely made, as shown by Plaintiffs' **Exhibit B,** attached hereto in pertinent part and made a part hereof.

7.     That despite Defendant's obligations under the Collective Bargaining Agreement and Trust Agreement to make contributions to the Fund, Defendant has repeatedly refused to submit monthly contribution report forms and the applicable payments of contributions owed by Defendant to Plaintiffs, plus the liquidated damages as a consequence of late payments for the period of August 2006 through current.

8.     That Plaintiffs have made continuous demands upon the Defendant for the report forms and contributions due, but Defendant has refused to satisfy said demands, as shown by Plaintiff's **Exhibit C,** attached hereto and made a part hereof.

9.     That pursuant to the terms of the Declaration of Trust (**Exhibit B**), the Defendant is liable for reasonable attorney's fees and court costs and all other reasonable expenses incurred by the Funds in collection of delinquent contributions and liquidated damages.

10.     Attached hereto and incorporated herein as **Exhibit D** is the Affidavit of Britt W. Sowle in support of his request for attorney's fees incurred in the prosecution of this matter.

WHEREFORE, Plaintiffs pray as follows:

A.     That Judgment be entered in favor of Plaintiff and against Defendant for its monthly reporting forms and payment of contributions for the period of August 2006 through current; plus pre-judgment interest, liquidated damages in the amount of twenty percent (20%) of the entire delinquency; and further, that Judgment be awarded for any additional months in which contributions, at the time of Judgment have not been remitted to the Fund with applicable reporting

forms, plus reasonable attorneys fees incurred by Plaintiffs in prosecuting this claim,

      B.     That Defendant be specifically required to perform and continue to perform all it's obligations to the Plaintiff,

      C.     That Defendant be decreed to pay to the Plaintiff it's reasonable attorney fees incurred in the prosecution of this action in the amount of $1,461.03, as provided by ERISA, 29 U.S.C. Section 1132(g)(2);

      D.     That Defendant be decreed to pay all costs attendant to the cost of these proceedings, and

      E.     That Plaintiffs be awarded such other and further relief by the Court as may be deemed just and equitable, all at Defendant's cost.

CENTRAL ILLINOIS CARPENTERS
HEALTH & WELFARE TRUST FUND, et.
al., Plaintiffs,

By:   s/ Britt W. Sowle
      BRITT W. SOWLE
      **CAVANAGH & O'HARA**
      Attorneys for Plaintiffs
      1609 North Illinois
      Swansea, Illinois 62226
      Telephone: (618)222-5945
      Fax: (618)222-6755
      britt@cavanagh-ohara.com

**E-FILED**
Monday, 02 April, 2007 04:14:13 PM
Clerk, U.S. District Court, ILCD

✎JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Central Illinois Carpenters Health & Welfare Trust Fund, et. al.

**DEFENDANTS**

OSC Enterprises, Inc., f/k/a Brunson Construction, Inc.

**(b)** County of Residence of First Listed Plaintiff  Logan
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Champaign
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Britt W. Sowle
Cavanagh & O'Hara
1609 North Illinois Street
Swansea, IL 62226

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of collective bargaining agreement, 29 U.S.C. § 185; Recovery of employee benefits, 29 U.S.C. §1132

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  Injunctive relief,

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE

DOCKET NUMBER

DATE  March 27, 2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**E-FILED**
Monday, 02 April, 2007  04:14:25 PM
Clerk, U.S. District Court, ILCD

# COLLECTIVE BARGAINING AGREEMENT

Between

Central Illinois Builders of A.G.C.
Builders Association of Tazewell County
McLean County Contractors Group
Greater Peoria Contractors and
Suppliers Association, Inc.

And

## Mid-Central Illinois Regional Council of Carpenters



SPRINGFIELD, LOCAL #16
CHAMPAIGN, LOCAL #44
BLOOMINGTON, LOCAL #63
PEORIA, LOCAL #183
QUINCY, LOCAL #189
DANVILLE, LOCAL #269
MATTOON, LOCAL #347
PEKIN, LOCAL #644
LITCHFIELD, LOCAL #725
DECATUR, LOCAL #742
JACKSONVILLE, LOCAL #904
MILLWRIGHTS, LOCAL #1051

MAY 1, 2003 through APRIL 30, 2006



**EXHIBIT**
A

...other hours and conditions are to be observed with respect to shift work, they shall be by mutual consent of the Contractor involved and the Union Business Manager or Regional Council.

In the event that Employees are changed from one shift to another, there shall be eight (8) hours lapse between shifts otherwise overtime wage rate shall be applicable.

By prior agreement between the Employer and the Union Business Manager, if the Employer is required to perform work which cannot be performed during regular working hours an Employee(s) may work a special shift, limited to seven (7) hours work included lunch, and receive eight (8) hours pay for the seven (7) hours worked.

No Employee may work on a special shift if he has performed bargaining unit work that day during the regular working hours.

## ARTICLE XII
## OPTIONAL 4-10 HOUR WORK WEEK

Section 1.    By mutual agreement between the Union and the Employer, a work week consisting of four (4) ten (10) hour days may be utilized on a project.

Section 2.    The work day shall consist of ten (10) hours worked between the hours of six o'clock (6:00) a.m. and five thirty (5:30) p.m., including lunch.

Section 3.    The work week shall consist of four (4) ten (10) hour days commencing at six o'clock (6:00) a.m. Monday and ending at five thirty (5:30) p.m. Thursday.

Section 4.    All hours worked in excess of ten (10) hours per day, Monday through Thursday shall be paid at the rate of time and one-half (1 1/2) the regular rate of pay.

Section 5.    In the event that weather conditions or other acceptable conditions to the Union prevent work from being performed on a regular work day, then Friday shall be considered a regular work day at the straight time rate of pay (only to attain forty (40) hours per week) provided however, that employees shall receive premium pay when any other craft working on the job at that time receives premium pay from the Employer. If Friday is worked as a regular work day, then any work performed on Saturday will be paid at the time and one-half (1 1/2) rate of pay.

Section 6.    In the event that the regular four (4) ten (10) hour days are worked and an Employer wants to work Friday, then all hours worked on Friday shall be paid at the rate of one

and one half (1 1/2) the regular rate of pay. In such case, any time worked on Saturday shall be paid at the double time rate of pay.

Section 7.    Sundays and Holidays shall be paid at the double time rate of pay.

Section 8.    The Employer shall provide the Union with the starting date and the conclusion date so that it may be determined that such request is not for the purpose of circumventing the overtime provisions of this contract.

section 9.    When Employees are required to work beyond ten (10) hours per day, they shall receive an additional lunch period.

## ARTICLE XIII
## WAGES, FRINGES AND PAYDAY

Section 1.    Except as specifically set forth in subsequent sections of this Article, all Employers agree to be bound by the wages, fringe benefits, dues deducts, apprenticeship, training and other industry advancement funds, affecting Employees which have been negotiated and legally established pursuant to bonafide collective bargaining, the Employer will be presented with such evidence by the Union and the Employer will, subject to the provisions of the Agreement, conform his operation accordingly.

Section 2.    No subsequent change in wages or working conditions in such area will become effective insofar as the Employer is concerned, except to the extent that any such change in wages or working conditions will be agreed upon and in accordance with the effective date agreed upon in negotiations between the Local Union having jurisdiction over the area and a recognized bargaining agent of the Employer(s) in such area and no conditions shall be imposed thereby other than those in force on local firms.

Section 3.    New wages and fringes shall become applicable upon consummation of applicable local collective bargaining agreements. New working conditions shall apply provided they do not conflict with the terms and provisions of this Agreement.

Section 4.    All fringe benefits shall be paid on hours for which work is performed, such as one and one half (1 & 1/2) times fringes shall be paid for all one and one half (1 & 1/2) overtime. Double rate fringes shall be paid for all double (2) rate overtime. Benefits paid at overtime rates shall be Pension, Annuity and Health and Welfare. All other check offs and deductions will be paid at straight time rate.

Section 5.    The Union shall have the right to picket for non-payment of wages, fringes and/or other deducts from employee's check, after giving five (5) days notice to the Owner's Representative.

Section 6.    Any Employee assigned to perform work that requires premium pay shall receive not less than four (4) hours premium pay in addition to his minimum wage rate for any work performed in the a.m., and not less than four (4) hours premium pay in addition to his minimum wage rate for any work performed in the p.m.

An Employee designated to work as top man on sheet piling or the man assigned to working the leads shall receive not less than fifty cents ($.50) per hour above the minimum wage rate.

Section 7.    The regular payday shall be once a week on Friday or such other day as the Employer shall designate prior to the start of the job. When the regular payday is a Holiday, then the last work day before that Holiday shall be payday.

Section 8.    Wages shall be payable before quitting time and are to be paid in cash or other legal tender. The weekly payroll shall end no earlier than the third work day prior to payday. Accompanying each payment of wages shall be a separate statement identifying the Employer by name and address, showing the total earnings, the amount and purpose of each deduction, number of hours and net earnings.

Section 9.    If no work on payday, the pay check shall be available at the job site, or other mutually agreeable location, not later than two (2) hours from the starting time.

Section 10.    Employees who are laid off on a day that is not the regular pay day may claim their final paycheck in person on the next regular pay day or have it overnight mailed to the Local Union Hall. If mailed, the check shall be dated for the actual day of layoff. If the check is not at the respective Local Union Hall the following day (excluding Saturdays, Sundays and Holidays) the employee shall receive two (2) hours pay at the straight time rate for each day the check is late. When an employee quits of his own accord, he shall wait for the regular payday for his wages.

Section 11.    If an Employee is made to wait beyond the time his wages are due, he shall be paid at the straight time rate for all the time he waits. Employee must wait on job site on which he/she is employed.

## ARTICLE XIV
## HOLIDAYS

Section 1.    Only the following Holidays shall be observed: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day after Thanksgiving in lieu of Veterans Day and Christmas Day. The above Holidays shall be observed according to National Law, where applicable. If a holiday is on a Sunday, then that holiday will be celebrated on the following Monday. If the holiday is on a Saturday, then the holiday will be celebrated on the preceding Friday.

Section 2.    No work will be performed on Labor Day under any consideration, except in an extreme emergency and then only after consent is given by the Business Manager.

## ARTICLE XV
## SUBCONTRACTING

Section 1.    The Employer agrees not to subcontract out any Carpenter work to be done at the site of construction, alteration, painting or repair of a building, structure or other work except to a person, firm or corporation signatory to this Agreement. The furnishing of materials, supplies or equipment and the delivery thereof shall in no case be considered as subcontracting.

Section 2.    Subcontractors coming under this Agreement must show proper insurance and agree to pay fringe benefits as provided in this Collective Bargaining Agreement.

Section 3.    This Article shall not apply to Owner designated Subcontractors. Further, the Contractor agrees to notify the Union of such designated Sub-contractors when he becomes aware of same.

Section 4.    At the time of the pre-job conference the Local Area Business Manager will bring to the attention of the Employer the availability of materials and/or services in the area. The Employer will make an effort to use such materials or services if possible.

## ARTICLE XVI
## JURISDICTIONAL DISPUTES

Section 1.    As used in this Agreement, the term "jurisdictional dispute" shall be defined as any dispute, difference or disagreement involving the assignment of particular work to one class or craft of Employees rather than to a different class or craft of Employees, regardless of that Employer's contractual

petitive environment. To this end, the Unions may provide to Employers current lists of those tradesmen that successfully complete upgrade training programs so that they will be naturally rewarded through increased work opportunities for reinvesting in their collective futures.

It is further agreed that the Unions will provide to Management Associations specific information on the scope of any Journeyman upgrade training.

## ARTICLE XXII
## TRUST AGREEMENTS, ETC.

Section 1.    The Employer agrees that Pension and Welfare Fund contributions under this Agreement are to be made to the Independent Employee Benefit Fund, Central Illinois Health & Welfare Fund, Construction Industry Welfare Fund of Central Illinois, and Danville Carpenters Health, Welfare and Pension Fund at the hourly rates specified elsewhere in this Agreement, and that such contributions are to be made on behalf of all persons covered by this Agreement for all hours worked by such persons for the Employers.

The Employer agrees to be bound by the terms of the Trust Agreements establishing the various above mentioned Funds, as they now exist and as they may hereafter be amended, as if the terms of such Agreements were fully set forth herein. The Employer understands and acknowledges that the Trustees of those Funds have the right to make reasonable rules relating to the administration of the Funds, including rules pertaining to the payment of fringe benefit contributions as specified in this Agreement, and pertaining to their rights and remedies as against Employers who are delinquent in making payment of such contributions to the Funds. The Employer agrees to be bound by such rules as currently exist or may from time to time be established or amended. Copies of such rules can be obtained by the Employer by request from the various Funds Administrator.

Section 2.    Supervisor Clause. The bargaining unit shall also include, for purposes of Pension and Welfare Fund contributions only, such persons in the employ of the Employer referred to herein as "Supervisors," as that term is defined in the Labor-Management Relations Act of 1947, as amended, provided that such Supervisor:

(A) has heretofore been included as a member of the "bargaining unit" on any basis, under the terms of this Collective

Bargaining Agreement, any predecessor Collective Bargaining Agreement, or any other Collective Bargaining Agreement entered into by this Local Union or Regional Council; and

B) was an Employee on whose behalf within the five (5) year period prior to the effective date of this Agreement contributions were required to be made or were in fact made to any of the various Funds as specified above for at least five thousand (5,000) hours worked.

It is expressly understood that the purpose of this provision is limited solely to permitting persons who have participated in the aforesaid Pension and Welfare Funds as members of the Bargaining Unit to continue to do so upon their promotion to Management positions, and is in no respect intended to include such persons within the scope of the Bargaining Unit for purposes of Union membership, Collective Bargaining or any other provisions of this Agreement other than provisions governing the payment of Pension and Welfare contributions.

It is further understood and agreed that since such Supervisors are not subject to the wage provisions of this Agreement, and may be paid on a salaried basis, contributions on behalf of such persons to the Pension and Welfare fund shall be on the basis of one hundred sixty (160) hours for each and every month during which such Supervisor receives any wages from the Employer.

Section 3.    Language for Company Owners/Sole Proprietors that are not Incorporated. Owners and/or Sole Proprietors engaged in the industry may participate in the Pension, Annuity, and Health and Welfare Funds provided, however, that the appropriate Agreements and Declarations of Trust and/or Administrative Rules of the appropriate Trusts specifically authorizes such participation. Each Owner/Sole Proprietor must contribute to the Fund the appropriate contribution rate adopted by the Trustees based on the number of hours actually worked. The Owner/Sole Proprietor must notify the Local Union in writing not less than thirty (30) days prior to the beginning of May 1st of each year as to whether or not each Owner/Sole Proprietor opts for said coverage and agrees to the terms and conditions of this Article and the Agreement and Declaration of Trust for the Fund. In the event that each Owner/Sole Proprietor opts for the coverage, it is specifically agreed and understood that such coverage shall continue for the duration of the current Collective Bargaining Agreement.

Section 4.    Forms, Payment Date and Audit Rights. Forms to be supplied by the Trustees of the various Funds shall be completed by each Employer and the Employer shall trans-

day of each month for all contributions attributable to the prior calendar month. In the event the Trustees of any Fund or the Union question the authenticity or accuracy of the information completed on the forms or in the event of a belief that the amounts being transmitted are not in accordance with the terms of this Agreement, the Trustees of any Fund or the Union shall have the right after giving notice to inspect the books of any Employer or to have an examination of same made by a Certified Public Accountant. In the event any discrepancy is discovered, the Employer shall bear the accounting cost incurred by the Trustees of the Union.

Section 5.    Required Documents. Prior to or immediately upon any Employer becoming signatory to the Agreement they shall furnish the following to the Union:

(A) A Certificate of Workman Compensation Insurance Policy issued by a Company authorized to do business in the State of Illinois.

(B) Employer's State and Federal Tax Identification Numbers.

(C) A copy of the Illinois State Certificate regarding Unemployment Insurance Compensation.

(D) A Surety Bond may be required of any Employer who was not signatory to the previous Agreement or has been listed as a delinquent contributor by Health and Welfare and/or Pension Funds included in this Agreement. In the event that any Employer, covered by this Agreement, should become delinquent, such Employer shall be required to post a bond in the amount specified below, or at the Union's option, provide a cash bond in the same amount.

| One (1) to Five (5) Employees | $ 10,000.00 |
| Five (5) to Ten (10) Employees | 15,000.00 |
| Ten (10) to Fifteen (15) Employees | 20,000.00 |
| Fifteen (15) or more Employees | 25,000.00 |

Section 6.    Each Employer shall be required to furnish, at his own cost and expense, a bond, with a recognized and responsible corporate surety, in an amount determined by the Local Union guaranteeing the payment of wages, all payroll deductions and fringes as set forth in Addendum A or he shall deposit and maintain with the Local Union, as collateral security for the payment of wages and fringes an amount in cash or in securities acceptable to the Local Union. The amount of bond, cash or securities shall be based upon an estimated amount

-38-

equal to thirty (30) days wages and fringes. After the Employer has employed Employees of the Union for two (2) years without default in payment of wages and fringes, he will not be required to furnish such bond or securities.

Section 7.    Failure to Comply. Anything to the contrary notwithstanding, the Union shall have the right to picket for non-payment of wages, fringes and/or other deducts from Employee's check, after giving five (5) days notice to the Owner's Representative, Contractor and Sub-Contractor where applicable.

Failure of the Employer to comply with the provisions of Articles I, III or VII, Pre-job Conference shall permit the Union the same options upon giving of thirty (30) hours notice to the same parties. It is understood that time is of the essence as regards to compliance and in order to be in full compliance an Employer will have to comply with the requirements of the Agreement at the time specified therein. The remedy provided for herein for the Union, shall not be exclusive of any other remedy by the way of suit in law or in equity, or otherwise whether brought by the Union or in the case of the Fringe Benefit Funds, by the Trustees or Administrators of any of the Funds.

### ARTICLE XXIII
### EMPLOYERS WORKING

Section 1.    Three (3) Owner/Partners may work with their tools on construction projects within the Mid-Central Illinois Regional Council, but must observe and comply with all applicable work rules and by-laws, and shall remit all fringe benefits, dues checkoff and assessments in effect, in accordance with this Agreement on all hours worked.

### ARTICLE XXIV
### TOOLS & EQUIPMENT

Section 1.    Cutting and Welding. Employees covered by this Agreement shall do all cutting and welding whether acetylene or electric when used in connection with any work within the jurisdiction of this Agreement. Any employee covered by this Agreement in cutting or welding shall be furnished an Employee, from within the bargaining unit, currently on the job site to watch after his safety and to protect him from fire, if it is determined necessary by the Job Superintendent.

The Employer shall furnish when engaged in any burning or welding, if required, such protective clothing as gloves, sleeves, aprons, and hoods.

-39-

receive not less than fifty cents ($ .50) per hour above the minimum hourly rate of pay.

Section 2.    The Employer shall furnish all drill bits, hacksaw blades, files, taps and dies, all socket wrenches of over 1/2" drive, all power tools and all star drills.

Section 3.    Employers and Employees shall observe all necessary safety precautions.

Section 4.    No power tools shall be used on any job of the Employer that are found to be unsafe by the Steward or Business Representative of the Local Union.

Section 5.    All Employees shall have their tools sharp when they report to work on a job.

Section 6.    The Employer shall provide, as required by job conditions, a suitable shed or facility for the exclusive use of Bargaining Unit Employees. Such facilities shall be heated, lighted and ventilated.

Section 7.    Hand Tools that an Employee Is Required to Furnish. Each Employee is required to furnish, for his individual use only, all of those hand tools customarily required of an Employee to perform his duties.

Section 8.    Tools that an Employer Is Required to Furnish. The Employer shall furnish all power operated tools, machinery and equipment, pop-rivet guns, dry-wall squares, Whitney punches, metric tools, dial indicators, micrometer over one inch (1"), precision levels over eight inches (8"), adjustable wrenches over twelve inches (12"), sockets over one-half inch (1/2") drive, open-end or box wrenches over one and one-eight inches (1 1/8"), taps, dies and reamers. The Employer shall replace all expendable tools such as drill bits, taps, hack-saw blades, files, hammer handles, etc. that are worn out or broken on the job that an Employee may use in the performance of his duties.

Section 9.    Employers Responsibility for Employees Tools that are Lost because of Fire, Theft or Water Damage. The Employee shall at all times be responsible for his own tools during working hours. In the event said tools are stored in the job tool box or tool shed under the control of the Employer; in which case the Employer agrees to assume responsibility for theft, fire or water damage of all tools not to exceed Four Hundred Dollars ($400.00) for Carpenter Tools and One Thousand Dollars ($1,000.00) for Millwright Tools. When said tools are lost or dam-

aged by cause as herein stated, the Employer agrees that he will, within three (3) working days, replace the tools with like quality tools, or if they are not available at that time will reimburse the Employee for his loss at current replacement value. If requested by the Employer, the Employee will furnish a complete inventory upon arrival at the job site.

## ARTICLE XXV
## MISCELLANEOUS

Section 1.    At least one (1) Carpenter shall be employed during the pouring of concrete in or on forms built to hold concrete except when pouring concrete in forms for sidewalks, slabs on grade, curbs and gutters. He will perform such work as assigned in the area within view of the pour.

Section 2.    Tool Crib. At any time Tool Cribs are used on jobs and an Employer is made responsible for issuing such tools and equipment as are used by members of the Bargaining Unit, a Bargaining Unit Employee shall be placed in charge of such facilities in order that such tools or equipment may be maintained and issued in good order.

Section 3.    The Employer shall furnish or have reasonable conveniently available toilets for Employees on all jobs.

Section 4.    These toilets shall be placed at the time work starts and continued until such time as the permanent toilets are put in operating condition. Whenever temporary toilets are to be provided, they shall be provided with water for flushing and shall be connected to a sanitary sewer, or shall be of a chemical type. In case of chemical toilets, these units will be serviced as needed or required to keep them in a sanitary condition. Pit privies will not be permitted.

## ARTICLE XXVI
## FRINGE BENEFITS

Section 1.    It is agreed that the Union will have the option of accepting contributions in Health and Welfare, Annuity, Training Fund and Pension Fund in lieu of wages with the approval of the Trustees of the respective Funds.

In the event the contributions required to be paid into the respective Health and Welfare is increased by order or resolution of Trustees at a later date, such increase shall be deducted by the Employer from the Employee's wages and the Employer shall remit such increases to the respective Funds. Provided, however, that the change is made at the anniversary date of the Agreement.

-40-

-41-

## Carpenters Local #44 Wage Addendum

Minimum hourly wages and benefits to be paid by the Employer for each hour worked by employees.

|                 | 11-01-04 |
|-----------------|----------|
| Worker          | $10.00   |
| Carpenter       | 16.00    |
| Lead Carpenters | 19.50    |

Each job site shall have a Lead Carpenter and employees are not bound to classification but may advance at any time upon the decision of the Contractor. Classifications are used to determine wage rates.

In addition to the above wages, the employer shall pay for each hour worked by employees covered by this agreement the following:

|         | 11-01-04 |
|---------|----------|
| Annuity | $ .50    |

The Employer shall deduct from the employees wages for each hour worked by the employees covered by this Agreement, the following:

|                       | 11-01-04             |
|-----------------------|----------------------|
| MCIRCC Dues Check Off | 2% of base wage rate |
| MCIRCC Promotional    | $ .07                |

**Health & Welfare Insurance available – See Addendum A

All benefits and deductions shall be paid to **CIC Health & Welfare Fund, 6180 Reliable Parkway, Chicago, IL 60686.**

**Affiliated with Mid-Central Illinois Regional Council of Carpenters**

By: _David L. Shewer_

Title: _Business Agent Carpenters Local #44_

Phone:    217-356-5463
          or
          217-744-1831

Date: _6/23/05_

Company Name and Address

_Brunson Const._

_1102 W. Hill St._

_Urbana, IL. 61801_

By: _Willie Brunson_

Print Name: _Willie Brunson Jr._

Title: _President_

Phone: _217-344-1668 (Fax)_

Fax: _217-390-9051 (cell #)_

Date: _6-23-05_

4

## Carpenters Local #44 Wage Addendum

Minimum hourly wages and benefits to be paid by the Employer for each hour worked by employees.

|  | **8-01-06** |
|---|---|
| Worker | $10.00 |
| Carpenter | 16.00 |
| Lead Carpenters | 19.50 |

Each job site shall have a Lead Carpenter and employees are not bound to classification but may advance at time upon the decision of the Contractor. Classifications are used to determine wage rates.

In addition to the above wages, the employer shall pay for each hour worked by employees covered by this agreement the following:

|  | **8-01-06** |
|---|---|
| Annuity | $ .50 |

The Employer shall deduct from the employees wages for each hour worked by the employees covered by the Agreement, the following:

|  | **8-01-06** |
|---|---|
| MCIRCC Dues Check Off | 2% of base wage rate |
| MCIRCC Promotional | $ .07 |

**Health & Welfare Insurance available – See Addendum A

All benefits and deductions shall be paid to **CIC Health & Welfare Fund, PO Box 19437, Springfield, IL 62794-9437.**

Carpenters Local Union #44
Affiliated with Mid-Central Illinois Regional
Council of Carpenters

By: Randy Jahnson

Title: Org

Phone:    217-356-5473
          or
          217-744-1831

Date: 7-27-2006

Company Name and Address

OSC Enterprise INC.
3302 Ridgewood Dr
Champaign, IL 61822

By: Willie Brunse

Print Name: Willie Brunse

Title: President / Secretary

Phone: 217-390-9051

Fax: 217-352-6024

Date: 7-27-06

## RECEIVED

JUL 3 1 2006

MID CENTRAL ILLINOIS

SENT TO FUND OFFICES 7-31-06

4

## Addendum A
### Insurance

If the Employer elects to participate in the Central Illinois Carpenters Health & Welfare Fund, the Employe will pay for each employee the rate of $ _3.58_ for each hour worked by that employee.

This contribution will be paid to **CIC Health & Welfare Trust Fund, PO Box 19437, Springfield, IL, 62' 9437.**

**Carpenters Local Union #44**
**Mid-Central Illinois Regional**
**Council of Carpenters**

By _Randy Johnson_

Title: _Org_

Phone:      217-356-5463
            or
            217-744-1831

Date: _7-27-06_

**Company Name and Address**

_OSC Enterprise INC_
_3302 Ridgewood D_
_Champaign, IL 6182_

By: _Willie Brynson Jr_

Print Name: _Willie Brunson_

Title: _President / Secretar,_

Phone: _B 217- 390 - 9051_

Fax: _217 - 352 - 6024_

Date: _7 - 27. 06_

## RECEIVED

JUL 3 1 2006

MID CENTRAL ILLINOIS
REGIONAL COUNCIL

SENT TO FUND OFFICES _7.31.06 - w_

5

**E-FILED**
Monday, 02 April, 2007  04:14:35 PM
Clerk, U.S. District Court, ILCD

CENTRAL ILLINOIS CARPENTERS
HEALTH AND WELFARE TRUST FUND

AS AMENDED AND RESTATED EFFECTIVE MAY 1, 1997

WHEREAS, an Agreement and Declaration of Trust was entered into on March 24, 1988 between Builders Association of Tazewell County, Central Illinois Builders of A.G.C., McLean County Contractors Group, Greater Peoria Contractors and Suppliers Association, Inc., and Associated General Contractors of Illinois, (said Associations being hereinafter referred to individually and collectively as the "Association"), on behalf of themselves and their Employers members and the Mid-Central Illinois District Council of Carpenters AFL-CIO for itself, and on behalf of the local unions under its jurisdiction, all of which are affiliated with the United Brotherhood of Carpenters and Joiners of America (hereinafter referred to as the "Union"), restating the Central Illinois Carpenters Health and Welfare Trust Fund (hereinafter referred to as the "Trust Agreement");

WHEREAS, Article VIII of Trust Agreement provides that the Trustees may amend Trust Agreement by a vote of three (3) Employer Trustees and three (3) Employee Trustees;

WHEREAS, on January 9, 1997, three (3) Employer Trustees and five (5) Employee Trustees voted to amend and restate the Trust Agreement as herein stated and said Trust Agreement, as amended and restated, shall be the Agreement between the parties, effective May 1, 1997.

## ARTICLE I

### Name of Trust

The Agreement and Declaration of Trust shall be known as the CENTRAL ILLINOIS CARPENTERS HEALTH AND WELFARE TRUST FUND.

## ARTICLE II

### Definitions

1.    "Basic Agreement" means the collective bargaining agreement or other written agreement between the Association, or an Employer and the Union requiring contributions to the Fund.

1



EXHIBIT

B

4. Every Trustee of the Trust and every person who handles funds or other property of the Fund shall be bonded for each fiscal year of the Trust in an amount not less than that which is required by applicable federal law or regulations

## ARTICLE IV

### Collections of Contributions

1. The Trustees shall have the power to demand, collect, sue for and receive (i) Employer contributions, (ii) Employee contributions, and (iii) contributions payable under any Reciprocity Agreement between other Health and Welfare Trust Funds and the Trustees, and shall hold such monies as part of the Fund for the purpose specified in Paragraph 1 of Article III hereof. In accordance with the policy of the Trustees, any Employer or Employee who fails to make contributions to the Fund, as required, shall be liable for interest on the unpaid contribution, liquidated damages in an amount not to exceed twenty percent (20%) of the unpaid contribution, and costs of collecting the unpaid contribution, including reasonable attorney fees.

2. The Employer shall make all reports and contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of all persons employed by him, their Social Security numbers, the hours worked by each such person, and such other information as the Trustees may reasonably require in connection with the administration of the Fund. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees, of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Trustees from the beginning of such Employer's participation in the Fund, unless given written authorization for variance by the Trustees, and all such records shall be maintained for a period of ten (10) years unless earlier destruction of the same is authorized by the Trustees. All Employers are required to designate the classification of all persons in his employment at a time contemporaneous with the reporting of hours worked or wages paid, and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such persons and the results of said investigation shall be conclusive for the purpose of determining whether an individual is a person on whom the Employer is required to pay contributions.

3. In the event it becomes necessary for the Fund or Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit of the Employer's books and records, the Employer shall be liable for all reasonable costs incurred therein including court costs, attorneys

4

fees, filing fees, audit costs, and any other expenses actually incurred by the Trustees in the course of action without regard to whether the Employer owed any delinquent contributions.

## ARTICLE V

### Administration of the Fund

The Fund shall be administered by ten (10) Trustees who shall have authority to control and manage the operation and administration of the Fund. Five (5) Trustees shall be designated as Employer Trustees, and five (5) Trustees shall be designated as Employee Trustees. The five (5) Employer Trustees shall be chosen by the five (5) Associations who are signatories to this Agreement and Declaration of Trust as follows:  Central Illinois Builders of A.G.C. shall choose one (1) Employer Trustee, McLean County Contractor Group shall choose one (1) Employer Trustee, Associated General Contractors of Illinois shall choose one (1) Employer Trustee, Builders Association of Tazewell County shall choose one (1) Employer Trustee, and Greater Peoria Contractors and Suppliers Association shall choose one (1) Employer Trustee.  The five (5) Employee Trustees shall be chosen by the Mid-Central Illinois District Council of Carpenters AFL-CIO with the Employee Trustees being selected from participating Local Unions.  One (1) of the Trustees shall be appointed as Chairman of the Fund, and one (1) of the Trustees shall be appointed as Secretary-Treasurer, provided, however, that, if the Chairman is an Employer Trustee, then the Secretary-Treasurer shall be an Employee Trustee and, if the Chairman is an Employee Trustee, then the Secretary-Treasurer shall be an Employer Trustee.  The Trustees may appoint an Administrator, who shall serve at the pleasure of the Trustees.

## ARTICLE VI

### Concerning the Trustees

1.    The Trustees shall establish a Welfare Plan to provide benefits thereunder for Employees, Retired Employees under the age of sixty-five (65) and their dependents.  The Trustees shall have the power to determine the conditions of eligibility, benefits to be paid and to construe the provisions under such Welfare Plan.

2.    The Trustees shall have power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein.

3.    The Trustees shall not receive compensation for the performance of their duties, but shall be reimbursed for expenses properly and actually incurred in the performance of their duties as Trustees.

5

IN WITNESS WHEREOF, the parties hereto have hereunto set
their hand as of this ___27___ day of ___MARCH___, 1997.

BUILDERS ASSOCIATION OF TAZEWELL COUNTY

By: _____

CENTRAL ILLINOIS BUILDERS OF A.G.C.

By: _____

McLEAN COUNTY CONTRACTORS GROUP

By: _____

GREATER PEORIA CONTRACTORS AND SUPPLIERS
ASSOCIATION

By: _____

ASSOCIATION GENERAL CONTRACTORS OF
ILLINOIS

By: _____

MID-CENTRAL ILLINOIS DISTRICT COUNCIL
OF CARPENTERS

By: _____
                    PRESIDENT

By: _____
                    SECRETARY

12

IN WITNESS WHEREOF, the undersigned, being all of the
Trustees of the CENTRAL ILLINOIS CARPENTERS HEALTH AND WELFARE
TRUST FUND, have hereto set their hands as of the __27__ day of
_____ _μ≯≤ι∕_ _____, 1997.

17-1/df/rev.cm

13

**E-FILED**
Monday, 02 April, 2007 04:14:46 PM
Clerk, U.S. District Court, ILCD

CAVANAGH & O'HARA

Attorneys At Law

1609 North Illinois Street
Swansea, Illinois 62226
Telephone (618) 222-5945
Fax (618) 222-6755

William K. Cavanagh
Michael W. O'Hara
Patrick J. O'Hara
James P. Moody

Cₒₒ

John T. Long
Britt W. Sowle

Cₒₒ

Of Counsel
Michael J. Masterson, P.C.

*Springfield Office*
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705
Telephone (217) 544-1771
Telefax (217) 544-9894

Cₒₒ

*Chicago Office*
20 South Clark
Suite 3000
Chicago, Illinois 60603
Telephone (312) 624-3141
Telefax (312) 855-0445

FPP 13

November 6, 2006

*Via Certified & Regular Mail*
Brunson Construction
3302 Ridgewood Drive
Champaign, Illinois 61821

RE:    *Delinquency to the Central Illinois Carpenters Health & Welfare Trust Fund*

Dear Employer:

Please be advised, this firm serves as counsel to the Central Illinois Carpenters Health &
Welfare Trust Fund. As such, we have been advised by the Fund that you are delinquent in
submitting contribution reporting forms and payment for the months of August 2006 through
September 2006. Due to your untimely reporting, in addition to the contributions owed for
**August 2006 through current**, you have been assessed a penalty of 20% of the total
contributions due. Therefore, you must submit the contributions due for the months of **August
2006 through September 2006**, with reporting forms and applicable penalties.

If you feel that you have a valid reason for submitting your reports in an untimely
manner, or if you feel that this may be an error, please notify us immediately. *You are reminded*
*that you must submit monthly reports even though you may not have any members working*
*during those reporting months*.

Under the provisions of Section 515 of the Employee Retirement Income Security Act of
1974, the Court must assess against you various interest costs and damages in the event a
Judgment is recovered against you. These costs are substantially higher than those the Fund is
presently willing to accept. You will also be responsible for all attorney fees, court costs, and
any other expenses incurred in collection.

The Fund has no desire to put you to the expense outlined above, but it was felt that it
might be appropriate to make sure that you are aware of same so that you could take it into
consideration in determining whether you want to voluntarily eliminate your delinquency
without the necessity of litigation to collect the amounts due.



EXHIBIT

C

If you do not wish that our collection efforts be pursued by way of a lawsuit, you should contact the undersigned **within seven (7) days from the date of this correspondence.**

We sincerely hope that we can have your cooperation in this matter in order to decrease your costs as well as ours and the employees who are participating in this Fund.

Very truly yours,

Tami M. Williams
Paralegal

cc:    Fund Office/Janet Kerns

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .39 |
| Certified Fee | 2.40 |
| Return Reciept Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.64 |

Postmark Here

Sent To Brunson Const.
Street, Apt. No.; or PO Box No. 3302 Ridgewood Dr.
City, State, ZIP+4 Champaign IL 61821-3463

PS Form 3800, June 2002          See Reverse for Instructions

7380
1741
0003
3350
7004

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brunson Construction
3302 Ridgewood Dr.
Champaign IL
61821-3463

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)
7004 1350 0003 1741 7380

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

## CAVANAGH & O'HARA
Attorneys At Law

1609 North Illinois Street
Swansea, Illinois 62226
Telephone (618) 222-5945
Fax (618) 222-6755

FPP-13

William K. Cavanagh
Michael W. O'Hara
Patrick J. O'Hara
James P. Moody

John T. Long
Britt W. Sowle

Of Counsel
Michael J. Masterson, P.C.

*Springfield Office*
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705
Telephone (217) 544-1771
Telefax (217) 544-9894

*Chicago Office*
20 South Clark
Suite 3000
Chicago, Illinois 60603
Telephone (312) 624-3141
Telefax (312) 855-0445

December 5, 2006

### SECOND & FINAL NOTICE

*Via Certified & Regular Mail*
Brunson Construction
3302 Ridgewood Drive
Champaign, Illinois 61821

*RE:    Delinquency to the Central Illinois Carpenters Health & Welfare Trust Fund*

Dear Employer:

Please be advised, this firm serves as counsel to the Central Illinois Carpenters Health & Welfare Trust Fund. As such, we have been advised by the Fund that you are delinquent in submitting contribution reporting forms and payment for the months of August 2006 through September 2006. Due to your untimely reporting, in addition to the contributions owed for **August 2006 through current**, you have been assessed a penalty of 20% of the total contributions due. Therefore, you must submit the contributions due for the months of **August 2006 through September 2006**, with reporting forms and applicable penalties.

If you feel that you have a valid reason for submitting your reports in an untimely manner, or if you feel that this may be an error, please notify us immediately. *__You are reminded that you must submit monthly reports even though you may not have any members working during those reporting months__*.

Under the provisions of Section 515 of the Employee Retirement Income Security Act of 1974, the Court must assess against you various interest costs and damages in the event a Judgment is recovered against you. These costs are substantially higher than those the Fund is presently willing to accept. You will also be responsible for all attorney fees, court costs, and any other expenses incurred in collection.

The Fund has no desire to put you to the expense outlined above, but it was felt that it might be appropriate to make sure that you are aware of same so that you could take it into consideration in determining whether you want to voluntarily eliminate your delinquency without the necessity of litigation to collect the amounts due.

If you do not wish that our collection efforts be pursued by way of a lawsuit, you should contact the undersigned **within seven (7) days from the date of this correspondence.**

We sincerely hope that we can have your cooperation in this matter in order to decrease your costs as well as ours and the employees who are participating in this Fund.

Very truly yours,

Tami M. Williams
Paralegal

cc:    Fund Office/Janet Kerns

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by (*Printed Name*)  Minnie Brunson  C. Date of Delivery 12-08-0 |

1. Article Addressed to:

Brunson Construction

3302 Ridgewood Dr

Champaign IL
          61821-3463

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)      7004 1350 0003 1741 9223

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-154

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .39 |
| Certified Fee | 2.40 |
| Return Reciept Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.64 |

Postmark Here

Sent To  Brunson Const
Street, Apt. No.; or PO Box No.  3302 Ridgewood Dr
City, State, ZIP+4  Champaign IL 61821-3463

7004 1350 0003 1741 9223

PS Form 3800, June 2002     See Reverse for Instructions

**E-FILED**
Monday, 02 April, 2007  04:14:54 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CENTRAL ILLINOIS CARPENTERS HEALTH )
& WELFARE FUND, CENTRAL ILLINOIS )
CARPENTERS RETIREMENT SAVINGS FUND, )
MID-CENTRAL ILLINOIS REGIONAL )
COUNCIL OF CARPENTERS, MID-CENTRAL )
ILLINOIS REGIONAL COUNCIL OF )
CARPENTERS JOINT APPRENTICESHIP AND )
TRAINING FUND, CARPENTERS FRINGE )
BENEFIT FUNDS and CARPENTERS LOCAL 44 )
 )
     Plaintiffs, )
 )
vs. )    No.
 )
OSC ENTERPRISES, INC., f/k/a BRUNSON )
CONSTRUCTION, INC. )
 )
     Defendant. )

## AFFIDAVIT IN SUPPORT OF ATTORNEY FEES

I, BRITT W. SOWLE, having first been duly sworn on oath, state that the following

itemization accurately represents the time and costs expended by Cavanagh & O'Hara in this

cause:

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 11/06/06 | Received and reviewed correspondence from the Fund Office regarding delinquent contributions. Preparation of demand letter to employer regarding payment of contributions via certified and regular mail; Transmittal of same to Fund Office. | .50 |
| 11/16/06 | Reviewed file; Contacted auditor to discuss lack of employer quarterly reports. Drafted recommendation to the Fund Office. | .50 |
| 12/05/06 | Review of file; Preparation of second and final letter to employer | |

1



EXHIBIT
D

|  |  |  |
|---|---|---|
|  | demanding payment of delinquent contributions via certified and regular mail; Transmittal of same to Janet Kerns at the Fund Office. | .40 |
| 02/06/07 | Telephone conference with Janet Kerns at the Fund Office regarding status of payment; Discuss filing suit. | .25 |
| 03/27/07 | Review file; Preparation of draft Complaint, Affidavit of Attorney Fees; Telephone conference with Illinois Secretary of State to obtain corporate status; Telephone conference with County Sheriff's Department regarding service of Summons. | 1.80 |
| 03/28/07 | Finalize Complaint; Preparation of Summons, Civil Cover Sheet and Certificate of Interest; Preparation of revised Affidavit of Attorney Fees; Assemble exhibits; Transmittal of same via electronic filing to U.S. District Court; Letter to U.S. District Court to pay filing fee and request issuance of Summons. | 2.00 |
|  | TOTAL HOURS 5.45 X $195.00 PER HOUR | $1,062.75 |
| 12/01/06 | Certified Mailings | $9.28 |
| 03/28/07 | U.S. District Court filing fee | $350.00 |
| 03/28/07 | Champaign County Sheriff - fees | $39.00 |

**TOTAL AMOUNT DUE:**     **$1,461.03**

FURTHER THIS AFFIANT SAYETH NAUGHT.

s/ Britt W. Sowle
BRITT W. SOWLE
**CAVANAGH & O'HARA**
Attorney for Plaintiffs
1609 North Illinois Street
Swansea, Illinois 62226
Telephone: 618/222-5945
Facsimile: 618/222-6755
britt@cavanagh-ohara.com

SUBSCRIBED and SWORN to before me on this 21st day of March 2007.

Tamara M Stice

NOTARY PUBLIC

2

"OFFICIAL SEAL"
TAMARA M. STICE
Notary Public, State of Illinois
My Commission Expires Jan. 30, 2011